**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 1:25-cv-02620-NYW-STV

CHAD DUNCAN, Individually and On Behalf of All Others Similarly Situated,

     Plaintiff,

v.

COVENANT AVIATION SECURITY, LLC,

     Defendant.

_____

**ORDER GRANTING MOTION TO COMPEL ARBITRATION**
_____

This matter is before the Court on Defendant's Motion to Compel Arbitration ("Motion to Compel Arbitration" or "Motion"). [Doc. 9, filed September 12, 2025]. Plaintiff opposed, [Doc. 10, filed September 24, 2025], and Defendant replied, [Doc. 14]. With leave of Court, Plaintiff then filed a sur-reply, [Doc. 29], and Defendant filed a response to the sur-reply, [Doc. 30]. Upon review of the Parties' briefing, the applicable case law, and the entire docket, this Court finds that oral argument will not materially assist in the resolution of the case. For the reasons set forth herein, the Court respectfully **GRANTS** the Motion to Compel Arbitration.

**BACKGROUND**

Plaintiff Chad Duncan ("Plaintiff" or "Mr. Duncan") initiated this action on August 20, 2025 to bring claims under the Federal Labor Standards Act ("FLSA") and Colorado state law, including the Colorado Wage Claim Act and the Denver Revised Municipal Code, for the denial of payment for all hours worked, including overtime and meal and

rest periods, on behalf of himself and those similarly situated.  [Doc. 1].  Mr. Duncan is a former[1] security guard employed by Defendant Covenant Aviation Security, LLC ("Defendant" or "Covenant") to provide airport security and screening services in Colorado and across the United States.  [*Id.* at ¶¶ 12, 23].  He alleged that he was employed as a non-exempt employee who is paid on an hourly basis.  [*Id.* at ¶¶ 25–26].  He contended that Covenant "employ[ed] a payroll policy of not compensating hourly-paid security guards for work performed during their meal periods, subjecting them to interruptions and requiring them to remain on duty during those meal periods," and that he "routinely perform[ed] work during his entire shift, is subject to interruptions during attempted meal and rest breaks, and in fact is interrupted or denied meal and rest breaks on a regular basis."  [*Id.* at ¶¶ 25, 28].  Plaintiff also alleged that he "perform[ed] work while 'off-the-clock' with Defendant's knowledge and [wa]s denied compensation for the time he spen[t] engaged in this work."  [*Id.* at ¶¶ 25, 28].  This conduct resulted in Plaintiff having to work more than forty hours in at least one work week during the three years before the Complaint was filed, without being paid one and one-half times his regular hourly rate. [*Id.* at ¶¶ 34, 36].

Plaintiff asserts the following causes of action:  (1) violation of the FLSA, 29 U.S.C. § 207, for failure to pay overtime on behalf of himself and a collective,[2] [*id.* at ¶¶ 67–85],

---

[1] Despite his factual allegation in the Complaint that he "is currently employed by Defendant," [Doc. 1 at ¶ 12], it is undisputed that Mr. Duncan was employed by Defendant as a security guard between September 18, 2024 to August 7, 2025.  [Doc. 9 at 3 (citing Doc. 9-1 at ¶ 9); Doc. 29 at 2 (citing Doc. 29-1 at ¶ 2)].

[2] Section 216(b) of the FLSA permits private individuals to challenge minimum wage and overtime pay violations by bringing claims on behalf of themselves and other employees similarly situated.  29 U.S.C. § 216(b).  The trial court is tasked with determining who is similarly situated for the purpose of a § 216(b) claim.  *Pena v. Home Care of Denver, LLC*, No. 19-cv-00069-CMA-NYW, 2019 WL 5577947, at *1 (D. Colo. Oct. 29, 2019).

("Claim I"); (2) violation of the Colorado Wage Claim Act pursuant to Denver Revised Municipal Code ("DRMC") § 58-6 for failure to pay overtime on behalf of himself and a Rule 23 class,[3] [*id.* at ¶¶ 86–93], ("Claim II"); (3) violation of the Colorado Wage Claim Act pursuant to DRMC § 58-6 for failure to pay to pay minimum wage for all hours worked on behalf of himself and a Rule 23 class, [*id.* at ¶¶ 94–99], ("Claim III"); (4) violations of the Colorado Minimum Wage Order No. 35 § 7 pursuant to DRMC § 58-6 for failure to provide a meal period of at least 30 continuous minutes to employees who have worked at least five hours on behalf of himself and a Rule 23 class, [*id.* at ¶¶ 100–107], ("Claim IV"); and (5) violations of the Colorado Minimum Wage Order No. 35 § 8 pursuant to DRMC § 58-6 for failure to provide a rest period of not less than ten continuous minutes for each segment of four hours of work on behalf of himself and a Rule 23 Class, [*id.* at ¶¶ 108–116], ("Claim V").

On September 12, 2025, Defendant filed this instant Motion to Compel Arbitration, arguing that Mr. Duncan was subject to a Collective Bargaining Agreement ("CBA") that required all claims arising out of employment, including but not limited to wage and hour claims, to be submitted to arbitration. [Doc. 9]. Specifically, the arbitration provision of the CBA provides, in pertinent part:

> Excluding any grievable matters under the collective bargaining agreement as outlined above, all claims arising out of employment, including but not limited to wage & hour claims, which may be asserted by any bargaining unit employee or against any bargaining unit member by the employer shall be resolved pursuant to the arbitration procedures as follows:

---

[3] Rule 23 of the Federal Rules of Civil Procedure governs the certification of a class that allows one or more members of a class to sue as representative parties on behalf of all members. Fed. R. Civ. P. 23(a). Before a plaintiff may sue on behalf of a class, the court must determine whether to certify the action as a class action. Fed. R. Civ. P. 23(c)(1).

a) The Employee and the Employer agree to utilize binding individual arbitration as the sole and exclusive means to resolve all disputes that may arise out of or be related in any way to the employee's employment.  The Employee and the Employer each specifically waive and relinquish their respective rights to bring a claim against the other in a court of law and to have a trial by jury.  Both the Employee and the Employer agree that any claim, dispute, and/or controversy that employee may have against the Employer (or its owners, directors, officers, managers, employees, or agents), or the Employer may have against the Employee, shall be submitted to and determined exclusively by binding arbitration, in conformity with the procedures of the Federal Arbitration Act and all of the Act's other mandatory and permissive rights to discovery. . . .  Included within the scope of this Agreement are all disputes, whether based on tort (such as invasion of privacy, assault and battery, or defamation), negligence, contract, statute (including, but not limited to, any claims of discrimination, harassment, retaliation, and wage and hour claims, any individual claims under Colorado state law, whether they be based on Title VII of the Civil Rights Act of 1964, as amended, the Colorado Revised Code, the Colorado Wage Act, the Colorado Wage Claim Act, the Colorado Labor Peace Act, or any other state or federal law or regulation), equitable law, or otherwise.

[Doc. 9-1 at 20].  Defendant further argued that Plaintiff could not pursue his collective and class claims because the CBA does not permit class-wide arbitration.  [*Id.* at 9].  Plaintiff opposes the Motion to Compel Arbitration, contending that the language of the arbitration agreement "only refers to the nebulous concept of 'wage and hour claims,'" and thus, is insufficient to compel arbitration of his causes of action.  [Doc. 10].  On Reply, Covenant argues that Plaintiff does not dispute that he has agreed to arbitrate his Colorado state law claims, or that his claims are not subject to collective or class arbitration.  [Doc. 14].

Two months after full briefing on the merits with leave of Court, Plaintiff filed a Sur-Reply arguing that the CBA no longer covers his claims, because he no longer worked for Defendant.  [Doc. 29].  Covenant filed a Response to the Sur-Reply contending that the CBA continues to bind his claims to arbitration, regardless of whether Mr. Duncan

4

remains employed by Defendant.  [Doc. 30].  The Honorable Scott T. Varholak stayed discovery, pending the resolution of the Motion to Compel Arbitration.  [Doc. 25].  The Motion is ripe for consideration, and the Court now turns to the Parties' arguments below.

## LEGAL STANDARD

"There is a strong federal policy favoring arbitration for dispute resolution, and this policy 'requires a liberal reading of arbitration agreements.'"  *GATX Mgmt. Servs., LLC v. Weakland*, 171 F. Supp. 2d 1159, 1162 (D. Colo. 2001) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 23 n.27 (1983)).  The Federal Arbitration Act ("FAA") provides that contractual agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Section 3 of the FAA obligates courts to stay litigation on matters that the parties have agreed to arbitrate, while section 4 authorizes a federal district court to compel arbitration for a dispute over which it would have jurisdiction.  *See* 9 U.S.C. §§ 3, 4.  "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

But because "arbitration is a matter of contract," the Court cannot require a party "to submit to arbitration any dispute which he has not agreed so to submit."  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quotation omitted).  "Although the Supreme Court has long recognized and enforced a liberal federal policy favoring arbitration agreements . . . the question whether parties have a valid arbitration agreement at all is a gateway matter that is presumptively for courts to decide."  *Bellman*

*v. i3Carbon, LLC*, 563 F. App'x 608, 611 (10th Cir. 2014) (cleaned up); *see also Brayman v. KeyPoint Gov't Sols., Inc.*, 83 F.4th 823, 832 (10th Cir. 2023) ("A court addressing a motion to compel arbitration therefore must first determine whether there exists an enforceable agreement to arbitrate." (citation omitted)).   While the existence of an agreement to arbitrate is a threshold matter borne by the party seeking arbitration, once that threshold is met, the burden shifts to the party resisting arbitration to show there is a genuine issue of material fact as to the making of the agreement, akin to summary judgment.   *See Butler v. AT&T*, No. 18-CV-01749-PAB-SKC, 2019 WL 13446993, at *2 (D. Colo. Mar. 18, 2019).   But "when considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate had been made by the parties, [the court] should give to the opposing party the benefit of all reasonable doubts and inferences that may arise."   *Vernon v. Qwest Comms. Int'l, Inc.*, 857 F. Supp. 2d 1135, 1149 (D. Colo. 2012) (quotation omitted), *aff'd*, 925 F. Supp. 2d 1185 (D. Colo. 2013).

Then, the court "determine[s] such matters as . . . whether the agreement covers a particular controversy."   *Brayman*, 83 F.4th at 832 (cleaned up); *see also Cavlovic v. J.C. Penney Corp.*, 884 F.3d 1051, 1057 (10th Cir. 2018) (after first finding a valid agreement to arbitrate, the second step requires a court to determine whether the allegations in the complaint are within the scope of the arbitration provision).   The party seeking to compel arbitration bears the burden of establishing that the matter at issue is subject to arbitration.  *See Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012) (where parties dispute the existence of an agreement to arbitrate, movant must prove "there are no genuine issues of material fact regarding the parties' agreement" (quotation omitted)); *GATX*, 171 F. Supp. 2d at 1162.

## ANALYSIS

### I.    Agreement to Arbitrate

The first step of the Court's arbitrability inquiry asks whether the Parties entered into a valid agreement to arbitrate. *Brayman*, 83 F.4th at 832. Whether a valid agreement to arbitrate exists "is simply a matter of contract between the parties." *Walker v. BuildDirect.com Techs., Inc.*, 733 F.3d 1001, 1004 (10th Cir. 2013) (quotation omitted). Accordingly, courts apply "ordinary state-law principles that govern the formation of contracts to determine whether a party has agreed to arbitrate a dispute." *Id.* (quotation omitted).

### A.    Plaintiff's Argument on Sur-Reply is Waived.

Initially, Plaintiff did not contest that he was bound by the CBA or its arbitration provision. *See generally* [Doc. 10]. Instead, Mr. Duncan argued that the arbitration provision did not cover his claims because the language of the provision was insufficiently clear to compel arbitration of his statutory claims. [*Id.* at 2]. Belatedly, two months after briefing closed on this instant Motion, Plaintiff asserted an additional argument based on information that he possessed even before the inception of the suit: that because he separated from employment with Covenant on August 7, 2025, he was not bound by the CBA at all, and that he had not reviewed the CBA. *See* [Doc. 29; Doc. 29-1 at ¶ 4]. This argument was not triggered by any new argument made by Defendant in its Reply, as Covenant has argued since the initial Motion to Compel Arbitration that Mr. Duncan was bound by the CBA and its arbitration provision despite recognizing that Mr. Duncan was no longer employed by Covenant. *See* [Doc. 9 at 2–3, 6–7].

7

Generally, sur-replies are not contemplated under the Federal Rules of Civil Procedure, this District's Local Rules of Civil Practice, or this Court's Civil Practice Standards, and are generally disfavored. *See Maccagnan v. Cherry Creek Sch. Dist. No. 5, Scott Siegfried*, No. 22-cv-00503-CMA-KLM, 2023 WL 6127904, at *1 (D. Colo. Sept. 18, 2023). It was incumbent upon Mr. Duncan to raise the argument that he was not bound by the CBA because he was no longer a Covenant employee in his Opposition to the Motion to Compel Arbitration because he certainly was aware of that fact, but he inexplicably did not. *See generally* [Doc. 10]. And having not preserved his argument with respect to the inapplicability of the CBA in his Opposition, Mr. Duncan has waived it. *Cf. United States v. Harrell*, 642 F.3d 907, 918 (10th Cir. 2011) (holding that "arguments raised for the first time in a reply brief are generally deemed waived"); *Woods v. First Nat. Bank of Durango*, No. 11-cv-02676-WYD-CBS, 2012 WL 4378536, at *2 (D. Colo. Sept. 25, 2012) (declining to consider arguments raised for the first time in a sur-reply as a basis for granting summary judgment).

This Court recognizes that the Honorable Scott T. Varholak found good cause to grant Plaintiff's Motion for Leave to File a Sur-Reply based on counsel's representation that *counsel* believed that Plaintiff remained an employee of Covenant at the time of his Opposition to the Motion to Compel Arbitration and also allowed Defendant to respond to the Sur-Reply. [Doc. 28]. But Rule 60(a) allows this Court to revisit a mistake arising from oversight or omission when one is found in an order, on its own, without notice. Fed. R. Civ. P. 60(a). In this case, review of its prior Order granting the Motion for Leave to File Sur-Reply is warranted. Defendant expressly states in its affirmative Motion that Mr. Duncan was employed with Covenant from September 2024 through August 7, 2025

8

[Doc. 9 at 3 (citing Doc. 9-1 at ¶ 12)].  Given counsel's obligation under Rule 1.4 of the Colorado Rules of Professional Conduct to "reasonably consult with the client about the means by which the client's objectives are to be accomplished" and "keep the client reasonably informed about the status of the matter," Colo. RPC 1.4(a),[4] the Court presumes that counsel provided Mr. Duncan a copy of the Motion and conferred with him before filing a substantive opposition on his behalf.  Mr. Duncan himself is in the best position to know that he was no longer employed by Covenant no later than August 4 or 7, 2025.  [Doc. 29-1 at ¶ 2].[5]  This Court respectfully declines to excuse Mr. Duncan's failure to raise this argument in his Opposition that was filed on September 24, 2025—when he was represented by able counsel and was in possession of this knowledge since before the filing of this action and certainly by the time the Opposition was due.

## B.    Even If It Was Not Waived, the Argument Fails.

Under the federal common law of arbitrability, an arbitration provision in a contract is presumed to survive the expiration of the underlying contract unless negated expressly or by clear implication.  *Riley Mfg. Co. v. Anchor Glass Container Corp.,* 157 F.3d 775, 781 (10th Cir. 1998) (citing *Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union,* 430 U.S. 243, 255 (1977)); *GATX,* 171 F. Supp. 2d at 1164 (holding arbitration clause in individual employment contract survives termination of employment when the action complained of related to the employment contract).  While

---

[4] D.C.COLO.LAttyR 2 adopts the Colorado Rules of Professional Conduct as the standards of professional responsibility for the United States District Court. D.C.COLO.LAttyR 2(a).

[5] It is undisputed that Mr. Duncan was employed by Defendant as a security guard between September 18, 2024 to August 7, 2025.  [Doc. 9 at 3 (citing Doc. 9-1 at ¶ 9); Doc. 29 at 2 (citing Doc. 29-1 at ¶ 2)].

Plaintiff concedes that the interpretation of the CBA is a matter of state contract law, Mr. Duncan does not meaningfully engage with Colorado law in his Sur-Reply. *See generally* [Doc. 29]. Under Colorado law, the Court looks at the plain language of the CBA and gives effect to "the mutual intent of the parties as well as the subject matter and purposes to be accomplished by the agreement." *Roddy v. Rosewood Res., Inc.*, No. 13-cv-00871-RBJ, 2013 WL 3713915, at *3 (D. Colo. July 16, 2013) (citing *Lane v. Urgitus,* 145 P. 3d 672, 677 (Colo. 2006)).

In this case, the CBA did not terminate until at least April 15, 2026—beyond Mr. Duncan's separation date from Covenant. [Doc. 29 at 2; Doc. 9-1 at 8]. The fact that Mr. Duncan now contends that he was not able to review the collective bargaining agreement between Covenant and the United Federation LEOS-PBA ("Union") during his employment,[6] [Doc. 29-1 at ¶ 4], is insufficient to create a genuine of material fact that he was aware of the CBA and was bound by the CBA. He does not deny that he was a member of the Union. Indeed, he implicitly concedes that he was a member of the Union when he acknowledges that the CBA requires Union membership, *see* [Doc. 29 at 2–8], and he presents no evidence that he repudiated the CBA or its arbitration provision. Instead, Mr. Duncan argues that "once Mr. Duncan ceased paying membership dues, he ceased being a Union member," [Doc. 29 at 2], and in turn, he ceased being bound by the arbitration provision, in part because the Union no longer owed him a duty of fair representation. *See* [Doc. 29 at 3–8]. This Court respectfully disagrees.

---

[6] While Plaintiff argues that he never signed the CBA, *see* [Doc. 29 at 3], there is no expectation that he would, *see* [Doc. 9-1 at 39]. Nor does he attest to that in his Declaration. *See* [Doc. 29-1 at ¶ 4]. And under the FAA, the terms of an arbitration agreement must be written, but need not be signed. *See Butler*, 2019 WL 13446993, at *4.

"To determine the scope of an arbitration agreement, we must examine the wording in order to ascertain and give effect to the mutual intent of the parties as well as the subject matter and purposes to be accomplished by the agreement." *Vaughn v. JP Morgan Chase & Co.*, No. 24-1016, 2025 WL 3514012, at *5 (10th Cir. Dec. 8, 2025) (quoting *Lane*, 145 P. 3d at 677). The CBA defines its intent broadly to include all conditions of employment, including rates of pay, wages, and hours:

> It is the intent and purpose of the Employer and the Union that this Agreement shall promote and improve industrial and economic relations between the Employer and its employees, and to set forth provisions with respect to *rates of pay, wages, hours of work and other conditions of employment* covering employees of the Employer, and to provide a peaceful method of adjusting grievances that may arise in the course of employment between the Employer and the employees with respect to wages, hours, and other conditions of employment and to provide for an orderly collective bargaining relationship between the Employer and the Union.

[Doc. 9-1 at 8 § 1 (emphasis added)]. With respect to the arbitration provision, the CBA contemplates that:

> The Employee and the Employer agree to utilize binding individual arbitration as the sole and exclusive means to resolve all disputes that may arise out of or be related in any way to the employee's employment.

[*Id.* at 19 § 16.7(F)(a)]. Nothing within the CBA limits "employee" to a current employee. *See generally* [*id.*]. And there is no dispute that Mr. Duncan was a current employee at the time his dispute regarding his rest/meal breaks and overtime arose with Covenant, or that his Complaint arises out of his employment with Covenant. *See generally* [Doc. 1]. Accordingly, this Court respectfully concludes that there is a valid arbitration agreement between the Parties despite the fact Mr. Duncan is no longer employed by Covenant. *See Butler*, 2019 WL 13446993, at *4; *Roddy*, 2013 WL 3713915, at *4; *Lane*, 145 P. 3d at 677; *see also Abdullayeva v. Attending Homecare Servs. LLC*, 928 F.3d 218, 223 (2d

Cir. 2019) (holding that all relevant times, plaintiff was a member of the union and employed by defendant and thus bound by the arbitration provisions of the CBA).

**II.    Mr. Duncan's Claims Fall Within the Plain Language of the Arbitration Clause**.

Having concluded that the CBA arbitration provision is valid and enforceable against Mr. Duncan, the Court moves to the second prong of the inquiry, i.e., determining whether the agreement covers Plaintiff's claims as asserted herein. *Brayman*, 83 F.4th at 832. Issues of arbitrability are governed by the FAA and federal substantive law of arbitrability. *See Cummings v. FedEx Ground Package Sys., Inc.*, 404 F.3d 1258, 1261 (10th Cir. 2005). It is well-settled that a collective-bargaining agreement can require union members to arbitrate causes of action that arise under federal statutes, including the FLSA. *See, e.g.*, *Epic Sys. Corp. v. Lewis*, 584 U.S. 497 (2018); *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009); *Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70 (1998); *Mathews v. Denver Newspaper Agency LLP*, 649 F.3d 1199, 1205 (10th Cir. 2011). Courts employ the "clear-and-unmistakable waiver standard to examine whether a union has waived a judicial forum for its members' individual claims" under statutory law. *Brent Elec. Co., Inc. v. Int'l Bhd. of Elec. Workers Loc. Union No. 584*, 110 F.4th 1196, 1220 (10th Cir. 2024), *cert. denied*, 145 S. Ct. 1168 (2025); *see also 14 Penn Plaza*, 556 U.S. at 260.

Defendant contends that the broad language of the arbitration provision encompasses all of Mr. Duncan's causes of action. [Doc. 9]. Mr. Duncan argues that the arbitration provision's reference to "wage and hour claims" is too nebulous to encompass the claims asserted in this action, and the provision is fatally flawed because it does not specifically reference the FLSA or the DRMC. [Doc. 10 at 3–5].

12

As an initial matter, as observed by Defendant on Reply, Plaintiff does not dispute that he has agreed to arbitrate his Colorado state law claims. [Doc. 14 at 2; Doc. 10]. Even if he did, such a position would be indefensible, given the plain language of the arbitration provision that expressly identifies "the Colorado Revised Code, the Colorado Wage Act, the Colorado Wage Claim Act, the Colorado Labor Peace Act, or any other state or federal law or regulation" as included within the scope of the provision. *See* [Doc. 9-1 at 20 §16.7(F)(a)]. Thus, this Court concludes that Claims II–V fall within the arbitration provision.[7]

Further, this Court finds nothing nebulous about the reference to "wage and hour claims," given the breadth of the provision and its further reference to federal law:

> all disputes that may arise out of or be related in any way to the employee's employment . . . [including] all disputes, whether based on tort (such as invasion of privacy, assault and battery, or defamation), negligence, contract, statute (including, but not limited to, any claims of discrimination, harassment, retaliation, and *wage and hour claims*, any individual claims under Colorado state law, *whether they be based on* Title VII of the Civil Rights Act of 1964, as amended, the Colorado Revised Code, the Colorado Wage Act, the Colorado Wage Claim Act, the Colorado Labor Peace Act, or any other state or *federal law* or regulation), equitable law, or otherwise.

[*Id.* at 9 (emphasis added)]. The Court is mindful that courts have taken different approaches in analyzing whether an arbitration provision in a collective bargaining agreement must enumerate the specific statute to be clear and unmistakable. *See Darrington v. Milton Hershey Sch.*, 958 F.3d 188, 194 (3d Cir. 2020) (discussing different

---

[7] Mr. Duncan is correct that the arbitration provision makes no reference to either the DRMC or municipal law. But this Court does not read the Complaint to include any claims under the DRMC that are distinct from Mr. Duncan's state law claims. Indeed, as pleaded, DRMC § 58-6 provides a private right of action to remedy unpaid wage violations that arise substantively under the Colorado Wage Claim Act; the Colorado Minimum Wage Act; and the Colorado Minimum Wage Order. *See* [Doc. 1 at ¶¶ 90–91, 95–97, 104–105, 111–113].

approaches to determining whether there has been a clear and unmistakable waiver for the purposes of federal statutory claims under a collective bargaining agreement). Plaintiff relies on *Ibarra v. United Parcel Serv.*, 695 F.3d 354 (5th Cir. 2012), for the proposition that because it does not explicitly identify the FLSA, this arbitration provision cannot encompass Plaintiff's FLSA claim.  *See* [Doc. 10 at 4].  Defendant relies on Fourth Circuit authority for its proposition that the statute does not need to be enumerated to be a clear and unmistakable agreement to arbitrate.  *See* [Doc. 14 at 3]; *see also Singletary v. Enersys, Inc.*, 57 F. App'x 161, 164 (4th Cir. 2003).  The Parties implicitly acknowledge that the Tenth Circuit has not resolved this issue by failing to cite any controlling authority, and this Court could not independently find such authority—leaving it to consider what authority appears to be the most persuasive under these particular facts.  *See A.A. v. Baltazar*, No. 1:25-cv-03174-CNS, 2025 WL 3187063, at *2 (D. Colo. Nov. 14, 2025) (observing that the district court is bound to follow clear precedent from the Tenth Circuit and Supreme Court but not out-of-circuit precedent).

In weighing the existing authority, this Court concludes that specific enumeration of the FLSA is not required, and finds the articulation by the *Darrington* court to be the most persuasive:

> The clear-and-unmistakable-waiver standard is satisfied if a collective bargaining agreement, interpreted according to applicable contract-interpretation principles, clearly and unmistakably waives a judicial forum for statutory claims. . . .  The bright-line approaches fashioned by our sister circuits may create clear expectations for bargaining parties and may prompt precise contract drafting. Indeed, it may be helpful for a court's analysis if bargaining parties specifically list the statutes for which they intend to waive a judicial forum.  But that approach may also invite drafting mistakes and cause unintended gaps as the statutory landscape changes. The standard enunciated in *Wright* does not require magic words or prescribe any bright-line approach requiring enumeration of statutes, so we decline to adopt one.

*Darrington*, 958 F.3d at 194–95.  Thus, this Court concludes that Claim I also falls within the arbitration provision, and accordingly, respectfully **GRANTS** Defendant's Motion to Compel Arbitration.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that:

(1)     Defendant's Motion to Compel Arbitration [Doc. 9] is **GRANTED**;

(2)     This action is **ADMINISTRATIVELY CLOSED** pending arbitration;

(3)     Within 10 days after the completion of arbitration, the Parties shall jointly file a Status Report indicating what, if any, further action required in this action; and

(4)      Should no Joint Status Report be filed or further action taken in case by **July 16, 2027**, this Court will **TERMINATE** this case without further notice.


DATED:  July 16, 2026                          BY THE COURT:

_____
Nina Y. Wang
United States District Judge

15